STATE OF LOUISIANA

VERSUS

MARVIN S. ACEVEDO

NO. 18-KA-683

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 17-3961, DIVISION "K"
HONORABLE ELLEN SHIRER KOVACH, JUDGE PRESIDING


May 08, 2019


**JUDE G. GRAVOIS**
**JUDGE**


Panel composed of Judges Susan M. Chehardy,
Jude G. Gravois, and Marc E. Johnson


**AFFIRMED**
   **JGG**
   **SMC**

**CONCURS WITH REASONS**
   **MEJ**

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
    Paul D. Connick, Jr.
    Terry M. Boudreaux
    Thomas J. Butler
    Rachel L. Africk
    Jennifer C. Voss

COUNSEL FOR DEFENDANT/APPELLANT,
MARVIN S. ACEVEDO
    Cynthia K. Meyer

**GRAVOIS, J.**

Defendant, Marvin S. Acevedo, appeals his conviction of possession of over 400 grams of cocaine in violation of La. R.S. 40:967(F). For the following reasons, we affirm defendant's conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

At trial, Detective Allan Doubleday of the Jefferson Parish Sheriff's Office ("JPSO") testified that in June of 2017, he received information from an informant that a suspect driving a Nissan Titan truck was transporting drugs from Texas to Jefferson Parish and that the suspect was storing drugs at a storage unit.[1] Detective Doubleday used the automated license plate reader ("ALPR") system, which takes photographs of license plates as vehicles pass by cameras throughout the state, to track the suspect's vehicle. JPSO Sergeant Joshua Collins monitored the ALPR cameras and advised Detective Doubleday that they had captured the suspect's vehicle traveling to Texas on many occasions. After learning on June 19, 2017 that the suspect's vehicle was traveling towards Texas, Detective Doubleday and other officers went to the Texas/Louisiana border to wait for the suspect's vehicle to return to Louisiana. Detective Doubleday eventually spotted the vehicle and followed it. He and the other officers kept in contact with other detectives who were positioned on I-10 at various locations on the entire route from Texas to Jefferson Parish.

Detective Doubleday testified that Sergeant Collins applied for and obtained a search warrant for the subject vehicle. Detective Doubleday was present for the stop of the vehicle, but Deputy C. Marshall and Detective N. Obiol, who were in a marked unit, stopped the suspect's vehicle in order to execute the search warrant.

---

[1] Detective Doubleday later testified that the confidential informant gave him the name "Marvin" and told him that the vehicle involved was a gray Nissan Titan. He also testified that the informant gave him the license plate number of that vehicle and the time of travel. He maintained that the informant was someone whom he was working with and whom he had worked with on other occasions.

Detective Doubleday observed two occupants in the vehicle who were later identified as defendant, the passenger, and Mr. Pedro Villareal, the driver. He separated them, advised them of their rights, and spoke to them. Detective Doubleday said that each of them gave a different explanation as to why they had been in Texas and were traveling back to Louisiana the same day. Defendant told him that they had been in Texas for several days attending vehicle auctions. However, Detective Doubleday knew from the surveillance that they had left Louisiana and returned that same day. He spoke to defendant and Mr. Villareal in English and said that defendant fully understood him in English. Detective Doubleday testified that he also speaks Spanish and could have communicated with defendant in Spanish if such had been necessary.

Detective Doubleday testified that they brought the vehicle to Louisiana State Police Troop B at Loyola and Williams Boulevards in Kenner. Prior to the search of the vehicle, a K-9 dog walked around the vehicle. The dog alerted or sensed that there were narcotics throughout the vehicle and specifically underneath it. After searching that area, deputies retrieved a magnetic hideaway key box from underneath the truck. Inside the box they found a plastic bag containing a white powdered substance that tested positive for cocaine. Detective Doubleday advised defendant of his rights a second time. Defendant was later transported to the detective bureau where Detective Doubleday advised defendant of his rights a third time. While questioning defendant, he admitted that the cocaine belonged to him and that Mr. Villareal had no knowledge of it.

Detective Doubleday testified that they searched the interior of the vehicle and found a wallet in the center console. Inside that wallet were a Florida ID with the name of "Marvin Santiago Acevedo" on it, a CubeSmart storage key, a CubeSmart access card with a storage unit number (409) and a PIN on it, and a bag of cocaine. Detective Doubleday stated that he found four cell phones in the

vehicle, three of which belonged to defendant and one of which belonged to Mr. Villareal. Detective Doubleday also recovered $3,359 in currency from the vehicle. Mr. Villareal was released because the evidence did not link him to the offense.[2]

Detective Doubleday testified that Sergeant Collins subsequently obtained a second search warrant for the vehicle. During the second search, they found another cell phone. On June 6, 2018, detectives applied for and obtained search warrants for the contents of the four cell phones belonging to defendant.

Detective Doubleday testified that CubeSmart had two locations on Belle Chasse Highway. They went to both locations because they weren't sure which one pertained to defendant. At the first location, they tried to access the site, but because the PIN produced an error message, they went to the other CubeSmart located nearby. When they used the PIN to access the gate at the other CubeSmart location, they received a message to return during certain business hours, which told them that they were in the right location.

Detective Doubleday testified that Sergeant Collins prepared a search warrant for the subject storage unit number 409; however, he mistakenly put the address of the first storage facility they visited (2321 Belle Chasse Highway) and not the correct one that they visited afterwards (2012 Belle Chasse Highway). They ultimately obtained a search warrant, after which they used the key from the wallet and entered storage unit number 409. Detective Doubleday testified that they found a cooler containing four compressed wrapped bricks. The bricks, each weighing one kilo, tested positive for cocaine.[3] They also found paperwork in the cooler, including documents from a BP oil spill lawsuit, an Entergy bill with the

---

[2] Detective Doubleday testified that since June 19, 2017, Mr. Villareal had been arrested on drug charges unrelated to the instant case.

[3] One kilogram is equal to 1000 grams. One kilogram is also equal to 2.2 pounds.

name "Marvin Santiago" on it, and a pay stub with the name "Marvin Santiago Acevedo" on it. A work shirt with defendant's name and his employer's name on it was also found in the unit. Nothing else in the storage unit, whether paperwork or other items, contained any other name on it.

Detective Doubleday testified that Sergeant Collins obtained a search warrant for leasing and access documents and surveillance video from the storage facility, after which Sergeant Collins met with Christina Collins, the manager of that storage facility, the next day. The leasing documents showed that defendant rented storage unit number 409 from February 27, 2017 until June 19, 2017. The records indicated that the storage unit was accessed sixteen times, but that he only saw defendant two times on the video.[4] Video surveillance showed defendant arriving in a Nissan Titan, exiting his vehicle, and entering the office of CubeSmart.[5] Wilmer Cerna was the registered owner of the Nissan Titan. Detective Doubleday testified that defendant and Mr. Cerna were associates, and that no other part of the investigation involved Mr. Cerna. Finally, Detective Doubleday maintained that he did not find a prior conviction for defendant.

Sergeant Collins also testified at trial, his testimony largely corroborating that of Detective Doubleday. Additionally, Sergeant Collins testified that in his experience of working many narcotics investigations, it was a common practice for individuals to store illegal drugs in storage facilities so that they did not have to keep contraband in their vehicles or houses. More likely than not, in his experience, those individuals would store their narcotics in a facility in the vicinity that was being used within their enterprise. Sergeant Collins maintained that they

---

[4] Sergeant Collins asserted that the access code was used to gain entry into unit number 409 on June 18, June 17, June 12, June 7, May 19, May 14, May 4, April 24, April 1, March 21, March 7, March 5, March 4, March 2, February 28, and February 27, 2017, the date when unit number 409 was first rented.

[5] Additionally, JPSO Detective Keith Dowling testified that he went to the CubeSmart on Belle Chasse Highway to assist Detective Doubleday with retrieving video surveillance. He viewed the surveillance video with Detective Doubleday at CubeSmart, and Detective Doubleday told him what he needed recorded. However, Detective Dowling explained that he could not retrieve the video because there was a problem with the DVR. He noted that CubeSmart only keeps surveillance for a maximum of three months, after which it gets copied over.

had prior knowledge from the informant that there was a storage facility close to defendant's residence.  The residence associated with defendant was somewhere on the Westbank near "Lafayette Boulevard" or Belle Chasse Highway.  Sergeant Collins explained that they started from the closest storage facility and worked their way in an outward perimeter until they ultimately found the correct one.

Regarding the four cell phones that were found, Sergeant Collins stated that it was common among drug dealers to obtain and change cell phones and numbers so that they cannot be tracked.

The trial court accepted Sandy Lee, forensic drug chemist at the JPSO Crime Lab, as an expert in the field of the analysis of controlled dangerous substances, who examined evidence in the instant case.  Ms. Lee testified that her specimen 001 (State's Exhibit 2) was a sealed plastic bag containing a magnetic key box containing one clear plastic bag with a white powdered substance inside.  Specimen 003 (State's Exhibit 6) was a sealed plastic bag containing one clear plastic bag with a white powdered substance inside.  Specimen 013 was a sealed paper bag containing four individually wrapped packages each containing a compressed, white powdered substance.  Ms. Lee testified that the material in all three specimens was found to contain cocaine.  The gross weight of specimen 001 was twelve grams, the gross weight of specimen three was under one gram, and the net weight of specimen 013 was 3,962 grams.

Kortnie Sinon, a latent print examiner at the JPSO Crime Lab, was accepted as an expert in the field of latent print processing and comparison.  Ms. Sinon testified that she processed four individual blocks of compressed, white powder wrapped in tape and that she found three fingerprints.  She was able to enter two of those fingerprints into her database, but she was not able to make any identification on either print.  She compared the three fingerprints to defendant, but the results were inconclusive.

Dr. Marcela Zozaya, a forensic DNA analyst for the JPSO, was accepted as an expert in the field of forensic DNA analysis. Dr. Zozaya testified that she analyzed swabs taken from the kilos of cocaine in the instant case and that there was an insufficient amount of DNA for testing.

Ms. Christine Collins testified that she was the general manager at the CubeSmart located at 2012 Belle Chasse Highway and that she handled leasing documents. She produced leasing documents pertaining to unit number 409 for defendant in response to the search warrant. She stated that the rental date was February 27, 2017. Ms. Collins produced videos in response to a subpoena for video surveillance. She met with the detective and reviewed those videos. Ms. Collins saw the truck on the video that the detective said belonged to defendant; however, she did not know defendant or what he looked like. She did not know if the detective was able to retrieve the video, but she asserted that the detective had difficulty downloading it. Ms. Collins testified that if an access code is used after 10:00 p.m., the machine will continue to beep, and the paperwork will say, "[s]ee the manager." She believed that if the access code was entered at the other location on Belle Chasse Highway, it would say the same thing.

Agent Bryan Huesman testified that he was employed by Immigration and Customs Enforcement ("ICE") in the Homeland Security Department. In June of 2017, he was contacted by Detective Doubleday who told him that he had arrested a man named "Marvin Acevedo" and that this individual had identification cards, Entergy payments, and BP settlements in that name. He attempted to verify if defendant was the real "Marvin Acevedo." Agent Huesman conducted computer checks and spoke with officials in Puerto Rico, where he learned that the real "Marvin Acevedo" was currently detained in jail and had been since 2014 for narcotics related charges in Puerto Rico. Agent Huesman knew the man in Puerto Rico was the real "Marvin Acevedo" because the social security number that was

given to him by Detective Doubleday was a Puerto-Rican issued social security number.  He stated that he had not been able to develop defendant's actual birth name because defendant had refused to talk to them.

JPSO Detective Solomon Burke, accepted as an expert in the field of mobile device forensics, testified that he was currently assigned to the digital forensics division where he examines electronic evidence.  Detective Burke testified that he received and examined three Samsung phones and one iPhone in the instant case.  He was able to extract data from the Samsung phones but not the iPhone.  Detective Burke asserted that he found no activity going farther back than thirty days and that none of the phones' data went back to February 27, 2017, or even prior to May of 2017.  He said that the Samsung phones were "dump" or "burner" phones, disposable phones that could be purchased and activated without identifying information.

JPSO Detective Edgardo Castro, who was fluent in Spanish, identified State's Exhibit 33 as text messages from the phones in Spanish that he translated into English.  Detective Castro identified the following incoming text message: "Need price on china, ounce"[6]  and indicated that was in English and did not need translating.  He also identified the following text messages: "Look, bro, he wants a 2, 8, 4, 3 p.m.  Can you?"; and "Look, Marvin, I'm not going to speak to frogs anymore.  I'll call you directly.  Good night."  Detective Castro testified that "frog" was another word for middleman.  He also identified other text messages: "Bro, did you mix the one you gave me today?"; "Bro, I want another eight.";[7] "Bro, give me an eight."; "I'm the bald one." (an outgoing message); "Friend, this is Marvin.

---

[6] Sergeant Collins testified that some of the more common street terms used to describe cocaine were "powder", "white", "blow", and "China white".

[7] Sergeant Collins testified that drugs come in common sizes and that when someone says they want an "eight ball", they want an eighth of an ounce.

Call me." (an outgoing message); and "Marvin, I'm Pablo. I'm calling you so you can come to my house to see the champions. I have no work. I took off."

Following defendant's arrest, on August 31, 2017, the Jefferson Parish District Attorney filed a bill of information charging defendant with possession of over 400 grams of cocaine in violation of La. R.S. 40:967(F).[8] Defendant was arraigned on September 5, 2017, and pled not guilty. He filed a Motion to Quash Bill of Information that was denied after a hearing on November 30, 2017. Defendant subsequently filed a writ application challenging this ruling, which this Court denied. *State v. Acevedo*, 17-K-708 (La. App. 5 Cir. 3/19/18) (unpublished writ disposition). He filed a writ application with the Louisiana Supreme Court challenging this Court's ruling. The Supreme Court denied the writ. *State v. Acevedo*, 18-619 (La. 5/25/18), 243 So.3d 569.

Defendant filed a Motion to Suppress Evidence and Statement that were denied after a hearing on March 15, 2018. He thereafter filed a writ application challenging these rulings, which this Court denied. *State v. Acevedo*, 18-K-196 (La. App. 5 Cir. 6/1/18) (unpublished writ disposition). Defendant filed a writ application with the Louisiana Supreme Court challenging this Court's ruling, who denied the writ. *State v. Acevedo*, 18-922 (La. 6/25/18), 246 So.3d 578.

On July 2, 2018, the State filed a notice of intent to use evidence of other crimes, which was granted at a hearing. Following that hearing, on July 9 and 10, 2018, the case was tried before a twelve-person jury, who found defendant guilty as charged. On August 8, 2018, defendant filed a Motion for New Trial and a Motion for Judgment of Acquittal that were denied on August 9, 2018. Afterwards, on August 9, 2018, defendant waived sentencing delays, and the trial court sentenced him to imprisonment at hard labor for twenty years and ordered

---

[8] On June 29, 2018, the State amended the bill of information to change the dates of the offense to on or between February 27, 2017 and June 20, 2017.

him to pay a $50,000 fine. The trial court also ordered that sentence to run consecutively to the sentence in case number 17-3961. Defendant subsequently made an oral motion to reconsider sentence that was denied and an oral motion for appeal that was granted. On August 10, 2018, defendant filed a timely written Motion for Appeal that was granted. This appeal followed.

On appeal, defendant argues the following assignments of error:

1. The trial court erred in failing to grant defendant's Motion to Quash the bill of information.

2. The trial court erred in denying the motion to suppress the statement allegedly made to police and the evidence seized from the storage unit.

3. The trial court erred in failing to grant the motion to disclose the identity of the confidential informant.

4. The trial court erred in allowing the introduction of other crimes evidence.

5. The evidence presented by the State was insufficient to support the conviction.

6. La. C.Cr.P. art. 782(A), allowing for a non-unanimous jury verdict, is unconstitutional and requires reversal of the jury verdict.[9]

### ASSIGNMENT OF ERROR NUMBER FIVE[10]

In this assignment, defendant argues that the evidence was insufficient to support his conviction. He also argues that the evidence presented by the State was inconsistent, misleading, and inconclusive. Defendant contends that the information from the confidential informant that defendant would be transporting a large quantity of cocaine was incorrect, because there was no large quantity of cocaine in the truck in which he was riding. Further, defendant asserts that there was no physical evidence to connect him to the cocaine found inside of the storage

---

[9] This assignment of error was asserted in a supplemental brief filed on the day of submission of the case.

[10] When the issues on appeal relate to both the sufficiency of the evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence by considering the entirety of the evidence. *State v. Hearold*, 603 So.2d 731, 734 (La. 1992). If the reviewing court determines that the evidence was insufficient, then the defendant is entitled to an acquittal, and no further inquiry as to trial errors is necessary. *Id.* Alternatively, when the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the defendant is not entitled to an acquittal, and the reviewing court must consider the assignments of trial error to determine whether the accused is entitled to a new trial. *Id.*; *See also State v. Nguyen*, 05-569 (La. App. 5 Cir. 2/3/06), 924 So.2d 258, 262. Thus, the sufficiency of the evidence is addressed first even though it is defendant's fifth assignment of error.

18-KA-683                    9

unit and that it was shown that other people had access to the storage unit. As a result, defendant maintains that the State failed to prove beyond a reasonable doubt that he knowingly and intentionally possessed over 400 grams of cocaine.

The State responds that the evidence was sufficient under the *Jackson*[11] standard to support defendant's conviction. It points out that defendant admitted that the cocaine found in the vehicle belonged to him and not to his passenger. The State contends that the evidence showed that defendant was in constructive possession of the cocaine found in the CubeSmart storage unit. It asserts that the jury obviously found that the State's witnesses were credible.

In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Neal*, 00-0674 (La. 6/29/01), 796 So.2d 649, 657, *cert. denied*, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002).

In cases involving circumstantial evidence, the trial court must instruct the jury that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. R.S. 15:438. The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. Rather, the reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. *State v. Mitchell*, 99-

---

[11] *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

3342 (La. 10/17/00), 772 So.2d 78, 83; *State v. Washington*, 03-1135 (La. App. 5 Cir. 1/27/04), 866 So.2d 973, 977.

Defendant was convicted of possession of over 400 grams of cocaine in violation of La. R.S. 40:967(F). To support a conviction for possession of cocaine, the State is required to prove that defendant was in possession of the drug and that he knowingly or intentionally possessed it. *State v. Robinson*, 04-964 (La. App. 5 Cir. 2/15/05), 896 So.2d 1115.

The element of possession may be established by showing defendant exercised either actual or constructive possession of the substance. *State v. Lewis*, 04-1074 (La. App. 5 Cir. 10/6/05), 916 So.2d 294, *writ denied*, 05-2382 (La. 3/31/06), 925 So.2d 1257. A person not in physical possession of the drug is considered to be in constructive possession of the drug, even though the drug is not in his physical custody, when it is under that person's dominion and control. *Id.* The key factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession are the defendant's knowledge that illegal drugs were in the area, his relations with a person found to be in actual possession, the defendant's access to the area where the drugs were found, evidence of recent drug use by the defendant, the existence of drug paraphernalia, and evidence that the area was frequented by drug users. *Id.*; *State v. Manson*, 01-159 (La. App. 5 Cir. 6/27/01), 791 So.2d 749, 761, *writ denied*, 01-2269 (La. 9/20/02), 825 So.2d 1156. "Mere presence in an area where drugs are found or mere association with the person in actual possession does not constitute constructive possession." *State v. Jones*, 04-1258 (La. App. 5 Cir. 4/26/05), 902 So.2d 426, 431. However, "[p]roximity to the drug, or association with the possessor, may establish a prima facie case of possession when colored by other evidence." *Id.*

In *State v. Every*, 09-0721 (La. App. 4 Cir. 3/24/10), 35 So.3d 410, 421, *writ denied*, 10-0929 (La. 11/19/10), 49 So.3d 397, the Fourth Circuit found that the State established that the defendant constructively possessed cocaine found in a unit of a storage facility. The defendant had contended on appeal that the evidence was insufficient to convict him because the unit at the storage facility in which the cocaine was found was rented to Ms. Mathew, that the Mercedes in which the keys to the storage unit were found was registered to Ms. Mathew, and that there was no evidence establishing he actually entered the subject unit at the storage facility. The Court noted that the officers' testimony established that the defendant had visited the storage unit alone and had entered the building that contained the particular unit. After leaving the storage facility, the officers observed a hand-to-hand transaction between the defendant and an unknown male in a motel parking lot. After he was arrested, the defendant admitted that he had stored approximately a quarter kilogram of cocaine at the storage facility and that the keys to the storage facility were located inside the console of the Mercedes. The appellate court found that although the storage unit was rented by Ms. Mathew and she was the registered owner of the Mercedes in which the keys to the storage unit were kept, the evidence established that the defendant exercised dominion and control of the cocaine found in the storage facility.

In the instant case, Detective Doubleday testified that defendant admitted that the cocaine found inside of the magnetic box underneath the truck belonged to him and that Mr. Villareal was unaware of it. Additionally, the wallet that the detectives found in the truck contained an ID with defendant's name on it, the CubeSmart storage key, the CubeSmart access card with a storage unit number and a PIN on it, and a bag of cocaine. As previously noted, the officers went to the two CubeSmart storage facilities in that area and located the one where the access code worked. They searched the subject unit and found four kilos of cocaine inside of a

cooler. Detective Doubleday testified that they also found documents with defendant's name on them inside of the cooler and a work shirt with defendant's name and his employer's name on it inside the storage unit. Nothing else in the storage unit contained any other names. Additionally, the State established that unit number 409 was rented in defendant's name, Detective Doubleday viewed video surveillance which showed defendant arriving at the storage facility two times; the records indicated that the storage unit was accessed sixteen times. Also, $3,359 was recovered from the vehicle in which defendant was riding in, and text messages indicated that defendant was selling drugs.

The jury heard the testimony from the witnesses at trial and obviously found them to be credible. The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness; the credibility of the witnesses will not be reweighed on appeal. *State v. Rowan*, 97-21 (La. App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056.

In light of the foregoing, upon review, we find that a rational trier of fact could have found that the evidence was sufficient under the *Jackson* standard to prove that the substances found in the storage facility, underneath the truck, and in defendant's wallet were cocaine and that the total weight of the cocaine was approximately 3,974 grams. Further, we find that the evidence established that defendant constructively possessed the cocaine found in unit number 409 of the storage facility, underneath the truck, and in defendant's wallet. As such we find that a rational trier of fact could have found that the evidence was sufficient under the *Jackson* standard to support the conviction. This assignment of error is without merit.

## ASSIGNMENT OF ERROR NUMBER ONE

In this assignment, defendant argues that the trial court erred in denying his Motion to Quash Bill of Information because a short time after he allegedly

violated La. R.S. 40:967(F), this section of the statute was repealed with the intent of decreasing the penalties for possession of narcotics. He further argues that in the instant case, as in *State v. Mayeux*, 01-3195 (La. 6/21/02), 820 So.2d 526, there can be no dispute that the changes to La. R.S. 40:967 were made with the intent to favor lesser penalties and to provide treatment for persons convicted of drug offenses.

The State responds that this claim should be denied under the law of the case doctrine since this Court previously denied relief on this issue, and the record does not establish a basis for contending that this Court's previous determination was patently erroneous and produced an unjust result. Therefore, the State submits that the applicable penalty provision to be applied to defendant was the pre-amendment penalty provisions found in La. R.S. 40:967(F), which this Court previously determined.

In his Motion to Quash Bill of Information, defendant argued that he was entitled to be charged under the recently amended version of La. R.S. 40:967, which became effective on August 1, 2017, citing *State v. Mayeux* in support of his position. The State opposed the motion to quash, arguing that the motion should be denied because it was well established that in Louisiana, the law in effect at the time a defendant committed his crime governs and that the facts in *Mayeux* were distinguishable. Following a hearing on the motion, the trial court denied the motion, agreeing with the State's position.

Defendant filed a writ application challenging this ruling, which this Court denied. *State v. Acevedo*, 17-K-108 (La. App. 5 Cir. 3/19/18) (unpublished writ disposition). He subsequently filed a writ application with the Louisiana Supreme Court challenging this Court's ruling. The Supreme Court denied the writ. *State v. Acevedo*, 18-619 (La. 5/25/18), 243 So.3d 569. In its denial, this Court found in pertinent part:

As a general rule, the law in effect at the time of the commission of a crime is determinative of the sentence the convicted must serve. *State v. Sugasti*, 01-3407 (La. 6/21/02), 820 So.2d 518, 520 (citing *State v. Wright*, 384 So.2d 399, 401 (La. 1980)); *State v. Henry*, 17-0516 (La. 5/26/17), 220 So.3d 706, 707 (citing *State v. Mayeux*, 01-3195 (La. 6/21/02), 820 So.2d 526, 530); *State v. Gonzalez*, 15-26 (La. App. 5 Cir. 8/25/15), 173 So.3d 1227, 1239. Therefore, a district court must sentence a defendant in accordance with the penalty provision of a criminal statute in effect at the time the crime took place. *Sugasti*, 820 So.2d at 520 (citing *State v. Narcisse*, 426 So.2d 118, 130-31(La. 1983)). This rule applies regardless of whether the penalty provision is subsequently amended to lessen a potential sentence between commission of the crime and conviction. *Id.* at 520; *see also* La. R.S. 1:2 ("No section of the Revised Statutes is retroactive unless it is expressly so stated.")

The Louisiana Supreme Court carved out a narrow exception to the general rule that the penalty provision in effect at the time of the crime determines the sentence the convicted must serve in *State v. Mayeux*, 01-3195 (La. 6/21/02), 820 So.2d 526. In *Mayeux*, the court determined that a penalty provision may apply retroactively if the amendments to the penalty provision are "ameliorative," and the legislative intent indicates that the new penalty provision is to be applied "upon conviction." *Mayeux*, 820 So.2d at 531; *Henry*, 220 So.3d at 707.

On August 1, 2017, the amendments of the penalty provision of La. R.S. 40:967 took effect. The changes – made by La. Acts. 2017, No. 281 – to the penalty for possession of cocaine are ameliorative with respect to the sentence that must be served. After the amendment, the minimum sentence was reduced from fifteen to ten years, which must be served at hard labor without the benefit of parole, probation or suspension of sentence. However, the bill amending the statute lacks a clear legislative intent that the change in the sentencing provision applies upon conviction. (Internal footnote omitted).

With a lack of a clear legislative intent that the penalty provision in effect at the time of conviction is determinative of the penalty the convicted felon must serve, the general rule must be applied. In *Sugasti, supra*, the Louisiana Supreme Court noted the strong policy considerations to maintain the general rule that the penalty provision in effect at the date of crime applies. If amendments to a penalty provision of a statute were to apply retroactively, it would encourage defendants to delay progress in the prosecution of their case with hope the legislature would pass an amendment reducing a potential sentence. *Sugasti*, 820 So.2d at 522.

The amendment to the penalty statute in *Mayeux, supra*, is an example of the precise language and clear legislative intent necessary for an amendment of a sentencing provision to apply retroactively. *State v. Parker*, 03-0924 (La. 4/14/04), 871 So.2d 317, 326. In *Mayeux*, the statute contained unique language indicating an explicit legislative intent to change the focus of sentencing individuals with

multiple driving while intoxicated convictions from imprisonment to treatment and rehabilitation; and the language of the statute indicates the ameliorative changes to the penalty provision of the statute may apply to individuals already convicted. *Id.* Because the legislature failed to use similar language in the amendment of La. R.S. 40:967 to indicate the more lenient sentencing provisions should apply upon conviction, relator's writ application is denied.

*State v. Acevedo*, 17-K-108 (La. App. 5 Cir. 3/19/18) (unpublished writ disposition).

Application of the law of the case doctrine is discretionary and the prior denial of a supervisory writ does not bar reconsideration of an issue on appeal, nor does it prevent the appellate panel from reaching a different conclusion on the issue. *State v. Voltolina*, 10-1090 (La. App. 5 Cir. 10/25/11), 77 So.3d 1027, 1031. Reconsideration is warranted when, in light of a subsequent trial record, it is apparent that the determination was patently erroneous and produced unjust results. *State v. Earls*, 12-448 (La. App. 5 Cir. 12/11/12), 106 So.3d 1149, 1159, *writ denied*, 13-132 (La. 9/20/13), 122 So.3d 1012.

In the instant case, upon review, we find that reconsideration of this issue is not warranted. No additional hearings were held on the motion to quash, and no additional evidence was produced at trial for this Court to review on appeal. This Court has already provided a detailed analysis of this issue and held that the law in effect at the time of the commission of the crime determines the sentence that a defendant must serve and that the legislature failed to use language in the amendment of La. R.S. 40:967 to indicate that the more lenient sentencing provisions should apply upon conviction. Furthermore, the Louisiana Supreme Court denied writs, declining to review this Court's ruling.

Accordingly, we decline to reconsider our prior ruling on this issue. This assignment of error is without merit.

In this assignment, defendant argues that the trial court erred in denying his Motion to Suppress the Statement allegedly given to police claiming ownership of the cocaine found in the magnetic box under the truck because his first language is Spanish, and the State did not prove that he was properly advised of his rights and made a knowing and intelligent waiver of his rights.

Defendant also argues that the trial court erred in denying his Motion to Suppress the Evidence seized from the storage unit because officers did not have a valid search warrant for that storage unit. He points out that at the time the search warrant was obtained, the officers were already aware that the confidential informant's information was unreliable, namely, that there was a minimal amount of cocaine in the truck even though the informant said that defendant would be transporting a "large" quantity of cocaine from Texas to Jefferson Parish. Further, defendant notes that the affidavit for the search warrant contained false information in that the affidavit says that a wallet was found with a storage access card containing the address of the storage facility, when in fact, this card does not contain an address.

The State responds that the claims regarding the denial of the Motion to Suppress the Statement are procedurally barred from appellate review. It contends that defendant abandoned his Motion to Suppress the Statement by proceeding to trial without having a hearing on that motion. It further contends that the record is clear that defendant never argued at the trial court level the reasons that he now argues on appeal with regard to the suppression of his statement.

Motion to Suppress Statement

The record reveals that there was a ruling on the motion to suppress statement and that it was preserved for appellate review. Defendant filed omnibus motions, including a motion to suppress statement. In that motion, defendant

argued that the statements he made should be suppressed because they were obtained unlawfully and illegally as they were not made to officers freely and voluntarily, because defendant was not advised of his rights under *Miranda*,[12] or because defendant had invoked his right to remain silent or to have an attorney and this right had not been honored. Also, defense counsel said prior to the hearing that the motions to be heard that day were the motions to suppress evidence and statement and that the witnesses for both were the same. Further, Detective Doubleday testified regarding issues surrounding the motion to suppress statement.

Although defense counsel did not orally argue at the hearing regarding the motion to suppress statement, his arguments were contained in the written motion filed prior to the hearing. Also, the trial court denied the "motion to suppress," which arguably meant both motions. The record reflects that the trial court was aware that both motions were being heard that day as she said before testimony was taken, "[s]o we're going to proceed on the motion to suppress evidence and the motion to suppress statement at this time." After hearing arguments of counsel, the trial judge said that she agreed with the State, that the correct location was searched, and that she was denying the "motion to suppress." She did not specify whether she was denying the motion to suppress evidence, the motion to suppress statement, or both. Defense counsel said that he was going to take a writ "just on the suppression of evidence portion, not the suppression of statements or anything along that line."

The district court's decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. *State v. Poupart*, 11-710 (La. App. 5 Cir. 2/28/12), 88 So.3d 1132, 1140, *writ denied*, 12-705 (La. 10/8/12), 98 So.3d 867. In determining

---

[12] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

whether the trial court's ruling on the motion to suppress is correct, an appellate court is not limited to the evidence presented at the suppression hearing; it may also review relevant evidence presented at trial. *Id.*

The State has the burden of proving the admissibility of a purported confession or statement by the defendant. La. C.Cr.P. art. 703(D); *State v. Arias-Chavarria*, 10-116 (La. App. 5 Cir. 9/28/10), 49 So.3d 426, 433, *writ denied*, 10-2432 (La. 2/25/11), 58 So.3d 460. Before an inculpatory statement made during a custodial interrogation may be introduced into evidence, the State must prove, beyond a reasonable doubt, that the defendant was first advised of his *Miranda* rights, that he voluntarily and intelligently waived them, and that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducements, or promises. *State v. Loeb*, 09-341 (La. App. 5 Cir. 2/23/10), 34 So.3d 917, 924-25, *writ denied*, 10-681 (La. 10/15/10), 45 So.3d 1110.

A determination of voluntariness is made on a case-by-case basis, depending on the totality of the facts and circumstances of each situation. The admissibility of a confession or statement is a determination for the trial judge, and the judge's conclusions on the credibility and weight of the testimony relating to the voluntary nature of the confession or statement are entitled to great weight and will not be overturned unless unsupported by the evidence. Testimony of the interviewing police officer alone may be sufficient proof that a defendant's statements were freely and voluntarily given. *State v. Arias-Chavarria*, 49 So.3d at 433.

At the suppression hearing, Detective Doubleday testified that when they first stopped defendant while he was in the vehicle on the way back from Texas, he advised defendant of his *Miranda* rights. Nevertheless, defendant did not speak to him at that time. Defendant was detained and brought to the investigation bureau for a follow-up interview where he was advised of his *Miranda* rights again.

Detective Doubleday noted that there was a slight language barrier as defendant was Hispanic; however, the detective stated that he speaks Spanish and had no trouble communicating with defendant. Defendant indicated that he completely understood his rights at that time and that he elected to give a statement. Detective Doubleday said that he did not force, threaten, or coerce defendant into giving a statement and that he did not promise defendant anything for his statement. At trial, the detective testified that he advised defendant of his rights three different times.

Detective Doubleday's testimony shows that the State proved beyond a reasonable doubt that defendant was advised of his *Miranda* rights and voluntarily and intelligently waived them prior to giving his statement. The evidence established that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducements, or promises. *See Loeb*, *supra*. Accordingly, we find that the trial court did not abuse its discretion by denying the Motion to Suppress Statement.

Motion to Suppress Evidence

The State also responds that defendant's claim regarding his Motion to Suppress the Evidence should be denied under the law of the case doctrine since this Court previously denied relief on this issue, and the record does not establish a basis for contending that this Court's previous determination was patently erroneous and produced an unjust result.

As was stated previously, defendant filed a writ application challenging the ruling on the motion to suppress evidence, which this Court denied. *State v. Acevedo*, 18-K-196 (La. App. 5 Cir. 6/1/18) (unpublished writ disposition). Defendant thereafter filed a writ application with the Louisiana Supreme Court challenging this Court's ruling, and the Supreme Court denied the writ. *State v.*

*Acevedo*, 18-922 (La. 6/25/18), 246 So.3d 578. In its denial, this Court found in pertinent part:

> Under the facts of this case – where officers received information from a reliable confidential informant that relator used a storage facility near his residence on Belle Chasse Hwy. to store cocaine and officers recovered a CubeSmart card with an access code which, according to the officers' testimony, only permitted access to one CubeSmart location on Belle Chasse Hwy., as well as a physical key for storage unit #409 – we find the trial court was correct in determining that the officers had probable cause to believe that contraband would be found in the CubeSmart storage unit #409. We further find that the officer's affidavit sufficiently set forth sufficient facts concerning the investigation and set forth an objective basis to support a probable cause finding. Moreover, the officer's inadvertent mistake of listing the wrong physical CubeSmart address does not warrant suppression of the evidence recovered in this case.
>
> Under the facts of this case, we find that the trial judge did not abuse her discretion in denying relator's motion to suppress the evidence recovered from storage unit #409 pursuant to a search warrant.
>
> This writ is denied.

*State v. Acevedo*, 18-K-196 (La. App. 5 Cir. 6/1/18) (unpublished writ disposition). (Internal citation and footnote omitted).

Upon review, we find that reconsideration of this issue on appeal is not warranted. The subsequent trial record does not indicate that the determination was patently erroneous and produced an unjust result. In its writ disposition, this Court provided a detailed analysis of this issue and found that the officer's affidavit sufficiently set forth sufficient facts concerning the investigation and an objective basis to support a probable cause finding. This Court also found that the officer's inadvertent mistake of listing the wrong physical CubeSmart address did not warrant suppression of the evidence recovered in this case. Accordingly, we decline to review this Court's previous ruling, and find that the trial court did not abuse her discretion in denying the Motion to Suppress the Evidence. This assignment of error is without merit.

## ASSIGNMENT OF ERROR NUMBER THREE

In this assignment, defendant argues that the trial court erred in denying his Motion to Disclose the Identity of the Confidential Informant since the confidential informant played an integral role in the investigation. He argues that the confidential informant's information that defendant would be transporting a large quantity of cocaine was incorrect, that his defense was that the cocaine found in the storage unit did not belong to him, and that the identity of the confidential informant would have assisted him in presenting his defense. Defendant contends that the denial of his motion impinged upon his constitutional right to present his defense.

The State responds that it is well settled that it is permitted to withhold the identity of a confidential informant from an accused pursuant to La. C.E. art. 514. It further responds that defendant has not met his burden of showing that the confidential informant played a crucial role in the underlying criminal transaction. The State points out that the trial court denied the motion because it was concerned that the life of the confidential informant would be endangered if his identity were made known.

On December 4, 2017, defendant filed a Motion to Disclose Identity of Confidential Informant. In that motion, defendant argued that the confidential informant should be produced at a hearing or a trial, that the failure to disclose his identity would infringe upon the constitutional rights of the accused, that disclosure of the confidential informant's identity would be relevant and of demonstrably material benefit to defendant in establishing defendant's case, that the confidential informant was an integral part of the transaction, and that failure to disclose his identity would substantially prejudice his right to a fair trial.

At the hearing on the motion, at a bench conference, the State said that it had obtained information from multiple sources that defendant was actively trying to

"put a hit out" on the confidential informant.  Defense counsel argued that he was entitled to proceed on the motion.  The trial judge stated that she was denying the motion outright based on the representations of the district attorney and because she believed that the life of the confidential informant would be endangered if this was pursued.  Defense counsel noted his objection to the trial court's ruling.

La. C.E. art. 514 provides, in pertinent part:

A. General rule of privilege. — The United States, a state, or subdivision thereof has a privilege to refuse to disclose, and to protect another from required disclosure of, the identity of a person who has furnished information in order to assist in an investigation of a possible violation of a criminal law.

B. Who may claim the privilege. — The privilege may be claimed by the prosecuting authority or an appropriate representative of the public entity to which the information was furnished.

C. Inapplicability of privilege. — No privilege shall be recognized if:

(1) The informer appears as a witness for the government and testifies with respect to matters previously disclosed in confidence.

(2) The identity of the informer has been disclosed to those who have cause to resent the communication by either the informer or the prosecution, or in a civil case, a person with authority to claim the privilege.

(3) The party seeking to overcome the privilege clearly demonstrates that the interest of the government in preventing disclosure is substantially outweighed by exceptional circumstances such that the informer's testimony is essential to the preparation of the defense or to a fair determination on the issue of guilt or innocence.

(4) In a criminal case, the prosecution objects[.]  (Emphasis as found in original.)

As a general rule, an informant's identity is privileged information.  *State v. Clark*, 05-61 (La. App. 5 Cir. 6/28/05), 909 So.2d 1007, 1014, *writ denied*, 05-2119 (La. 3/17/06), 925 So.2d 538 (citing *State v. Broadway*, 96-2659 (La. 10/19/99), 753 So.2d 801, 815, *cert. denied*, 529 U.S. 1056, 120 S.Ct. 1562, 146 L.Ed.2d 466 (2000)).  This privilege is founded upon public policy and seeks to further and protect the public interest and law enforcement by encouraging people

to supply information to the police by protecting their anonymity. *Clark*, 05-61, 909 So.2d at 1014-15. However, exceptions to this privilege exist. *See* La. C.E. art. 514(C). The identity of an informant should be made known to the accused only when his right to prepare his defense outweighs the need for protection of the flow of information. *State v. Zapata*, 97-1230 (La. App. 5 Cir. 5/27/98), 713 So.2d 1152, 1158, *writ denied*, 98-1766 (La. 11/6/98), 727 So.2d 443. The burden is on the defendant to show exceptional circumstances warranting disclosure of the name of a confidential informant. *State v. Hills*, 03-716 (La. App. 5 Cir. 12/9/03), 866 So.2d 278, 282. The trial court is afforded great discretion in making this determination. *Id.* When an informant has played a crucial role in the criminal transaction, and when his or her testimony is necessary to ensure a fair trial, disclosure of the informant's identity should be ordered. *Clark*, 05-61, 909 So.2d at 1015. Conversely, when an informant only supplies information and does not participate in the transaction, disclosure is not warranted. *Id.*

In *State v. Howard*, 10-869 (La. App. 5 Cir. 5/24/11), 66 So.3d 1160, 1168-69, *writ denied*, 11-1468 (La. 4/9/12), 85 So.3d 135, this Court found that the defendant failed to show exceptional circumstances warranting disclosure of the name of a confidential informant where the informant's information may have provided the evidence to support a search warrant, but it did not contribute to the crime charged, which was possession of drugs found at an apartment.

In *State v. Regis*, 09-0806 (La. App. 4 Cir. 11/12/09), 25 So.3d 183, *writ denied*, 10-0003 (La. 6/18/10), 38 So.3d 322, the Fourth Circuit found that where a confidential informant was not a participant in the crime of attempted possession of cocaine with intent to distribute, and there was no indication that the defendant's rights would have been prejudiced by non-disclosure, the defense was not entitled to compel disclosure of the confidential informant's identity.

In *State v. Smith*, 09-259 (La. App. 5 Cir. 11/24/09), 28 So.3d 1092, *writ denied*, 10-1414 (La. 6/24/11), 64 So.3d 212, this Court found that there was no abuse of discretion in a trial court's refusal to order disclosure of a confidential informant's identity because the informant did not play a crucial role in the transaction that led to the defendant's arrest where a possession of cocaine charge was based on cocaine found when a search warrant was executed and not evidence seized in the controlled buy between the defendant and the informant.

In the instant case, upon review, we find that defendant has failed to show exceptional circumstances such that the informant's identity or testimony was essential to the preparation of his defense or to a fair determination of the issue of guilt or innocence. *See* La. C.E. art. 514(C)(3). Also, although the informant provided information used to support a search warrant, the informant was not a participant in the crime of possession of over 400 grams of cocaine. Further, the trial court was concerned for the safety of the informant based on the representations of the State that it had received information that defendant was trying to have the informant killed.

Accordingly, we find that the trial court did not abuse its discretion by denying the Motion to Disclose Identity of Confidential Informant. This assignment of error is without merit.

## ASSIGNMENT OF ERROR NUMBER FOUR

In this assignment, defendant argues that the trial court erred in allowing the State to present evidence of another crime he allegedly committed. He further argues that evidence that he resisted arrest by refusing to provide his true identity was not relevant and confused the jury. Defendant contends that whether or not "Marvin Acevedo" was his real name was not material to proving that he had the intent to possess the cocaine seized from the storage unit. He also contends that this evidence was used to portray him in the worst possible light, especially

considering the fact that currently there are frequent news stories regarding illegal aliens committing crimes in this country. Defendant asserts that the improper admission of this evidence prevented him from receiving a fair trial and contributed to the guilty verdict.

The State responds that the trial court did not err in admitting the other crimes evidence. It further responds that the purpose of the other crimes evidence was to show defendant's intent to possess the cocaine. The State explains that evidence that defendant failed to provide the trial court and law enforcement with his true identity was highly probative to the issue of intent and guilty knowledge, as well as his opportunity to transport and possess the cocaine and an absence of mistake or accident. The State further explains that the other crimes evidence was admissible as *res gestae* evidence as it constituted an integral part of the crime. The State notes that because defendant refused to provide his true identity, it was necessary for the State to charge and try defendant under his alias, "Marvin Acevedo."

On July 2, 2018, the State filed State's Notice of Intent to Offer Evidence of the Defendant's Other Crimes, Wrongs, or Acts Pursuant to La. C.E. Article 404(B). In that notice, the State argued that evidence pertaining to these other crimes was admissible for its independent relevance to show motive, intent, guilty knowledge, and to negate a claim of accident or mistake. The State also argued that such evidence was admissible because it constituted *res gestae* in that the other crime or bad act forms an integral part of the police investigation. Additionally, the State said that it intended to conduct the misdemeanor judge trial for defendant's charge of violating La. R.S. 14:108, resisting an officer by refusing to provide his true identification, simultaneously with his jury trial for the possession of cocaine charge. It asserted that in the interest of judicial economy and efficiency, since the same witnesses would be called to testify to the same facts at

both trials, and the fact that defendant still had not provided his true identity, it was both relevant and conserved time and judicial resources.[13] The State noted that without defendant's real name, it could not properly run his criminal history and investigate associations to organized crime.

Defense counsel responded that the evidence did not show intent, motive, or guilty knowledge. He said that the State was able to run a "rap" sheet on defendant and was able to find that he had a DWI conviction. Defense counsel noted that defendant's paperwork indicated that he has been "around for a while," which was evidenced by wage information from 2009 and 2010. He pointed out that the State is using evidence that defendant has not provided his true identity to show that he came into this country illegally. The State responded that it did not intend to offer evidence that defendant was an illegal alien and asserted that many people used fake names for multiple reasons.

After hearing arguments of counsel, the trial judge stated that she was going to allow the State's 404(B) evidence as she thought that it tended to show motive, guilty knowledge, and intent. The trial judge also stated that whether defendant decided to offer as an excuse that he used the false name to come into the country was the defense's decision.

At trial, during the cross-examination of Detective Doubleday, defense counsel asked him if he was able to find any convictions on defendant, and the detective responded negatively. After the cross-examination, during a bench conference, the State said that it was not intending to offer any evidence about defendant's identity, but that defense counsel had opened the door by asking the detective if he was able to find any convictions on defendant. The trial court

---

[13] After the jury convicted defendant of possession of over 400 grams of cocaine, the State told the trial court that it had intended to try the misdemeanor charge of resisting arrest outside of the presence of the jury but since defense counsel opened the door to that evidence, it had already been introduced at trial. The trial judge then found defendant guilty of that charge.

agreed and allowed the evidence to come in. Thereafter, Detective Doubleday testified during re-direct examination by the State that defendant had been using the name "Marvin Acevedo" for years and that was the name that was on his ID card, the BP paperwork, the Entergy bill, the pay stub, and the tax returns. Detective Doubleday further testified that he later learned that was not defendant's real name and that he did not know defendant's real name. He stated that he could not run a complete "rap" sheet on defendant because he could not determine what defendant's real name was.

Also, Agent Bryan Huesman of ICE testified at trial that he attempted to verify if defendant was the real "Marvin Acevedo," discovering instead (as previously noted) that the real "Marvin Acevedo" had been detained since 2014 for narcotics related charges in Puerto Rico. He stated that he had not been able to develop defendant's actual birth name as defendant had refused to talk to them.

Generally, evidence of other crimes or bad acts committed by a criminal defendant is not admissible at trial. La. C.E. art. 404(B)(1); *State v. Prieur*, 277 So.2d 126, 128 (La. 1973). However, when evidence of other crimes tends to prove a material issue and has independent relevance other than to show that the defendant is of bad character, it may be admitted by certain statutory and jurisprudential exceptions to this rule. *State v. Williams*, 10-51 (La. App. 5 Cir. 7/27/10), 47 So.3d 467, 474, *writ denied*, 10-2083 (La. 2/18/11), 57 So.3d 330. Evidence of other crimes is admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding to such an extent that the State could not accurately present its case without reference to the prior bad acts. La. C.E. art. 404(B)(1); *State v. Lawson*, 08-123 (La. App. 5 Cir. 11/12/08), 1 So.3d 516, 525.

In order for other crimes evidence to be admitted under La. C.E. art. 404(B)(1), one of the factors enumerated in the article must be at issue, have some independent relevance, or be an element of the crime charged. *Lawson*, 1 So.3d at 525-26. Moreover, the probative value of the extraneous evidence must outweigh the prejudicial effect. La. C.E. art. 403.

Evidence that constitutes an integral part of the crime, formerly known as "*res gestae*," is admissible without any prior notice to the defense. *State v. Charles*, 00-1586 (La. App. 5 Cir. 6/27/01), 790 So.2d 705, 708. A close connexity between the charged and uncharged conduct is required to ensure that "the purpose served by admission of the other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place." *Id.* (citing *State v. Colomb*, 98-2813 (La. 10/1/99), 747 So.2d 1074, 1076). This Court recognized the following in *State v. Rhea*, 03-1273 (La. App. 5 Cir. 2/23/04), 868 So.2d 863, 867:

> The test for integral act (*res gestae*) evidence is, therefore, not simply whether the State might somehow structure its case to avoid any mention of the uncharged act or conduct, but whether doing so would deprive the State's case of narrative momentum and cohesiveness, "with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict."

*Id.* (citing *State v. Colomb*, 98-2813, 747 So.2d at 1076, quoting *Old Chief v. United States*, 519 U.S. 172, 187, 117 S.Ct. 644, 653, 136 L.Ed.2d 574 (1997)).

The defendant bears the burden to show that he was prejudiced by the admission of the other crimes evidence. *State v. Miller*, 10-718 (La. App. 5 Cir. 12/28/22), 83 So.3d 178, 187, *writ denied*, 12-0282 (La. 5/18/12), 89 So.3d 1191, *cert. denied*, 568 U.S. 1157, 133 S.Ct. 1238, 185 L.Ed.2d 177 (2013). Clearly, evidence of other crimes or bad acts is prejudicial since all evidence that tends to make it more probable than not that an individual committed a criminal offense is

necessarily prejudicial. The underlying policy is not to prevent prejudice, since evidence of other crimes is always prejudicial, but to protect against unfair prejudice when the evidence is only marginally relevant to the determination of guilt of the charged crime. *State v. Williams*, 02-645 (La. App. 5 Cir. 11/26/02), 833 So.2d 497, 507, *writ denied*, 02-3182 (La. 4/25/03), 842 So.2d 398. Absent an abuse of discretion, a trial court's ruling on the admissibility of evidence pursuant to La. C.E. art 404(B)(1) will not be disturbed. *State v. Maize*, 16-575 (La. App. 5 Cir. 6/15/17), 223 So.3d 633, 649, *writ denied*, 17-1265 (La. 4/27/18), 241 So.3d 306.

In *State v. Walker*, 15-0510, 2015 La. App. Unpub. LEXIS 453 (La. App. 1 Cir. 11/6/15), the defendant provided a false name and date of birth when he was arrested. He contended that the trial court erred by allowing evidence of this crime as part of the *res gestae* because it was not an integral part of the crime. The appellate court found that those statements were part of one continuous transaction of the criminal act of simple burglary and the attempt to conceal his identity after being caught. The appellate court also found that even if the other crimes evidence was inadmissible, any error was harmless considering that the State's evidence clearly established the defendant's guilt.

In *State v. Smith*, 26,661 (La. App. 2 Cir. 3/1/95), 651 So.2d 890, *writ denied*, 95-0918 (La. 9/15/95), 660 So.2d 458, the other crimes evidence was the defendant's statements about having outstanding warrants to explain why he fled police and gave a false name at the hospital. The appellate court found that the introduction of the defendant's own exculpatory statements as to why he fled and gave a false name, combined with the cumulative effect of his testimony at trial, resulted in a showing that there was no substantial prejudice to his rights in the admission of this evidence.

In the instant case, defendant provided a false name to police when he was arrested, and he never provided his real name. Upon review, we find that the trial court did not err by admitting this evidence because it was part of one continuous transaction of the criminal act of possession of cocaine and the attempt to conceal his identity after being caught. Further, defense counsel "opened the door" to the testimony when he asked Detective Doubleday on cross-examination whether he was able to find any convictions for defendant. Accordingly, we find that the trial court did not abuse its discretion by admitting the other crimes evidence in this case. This assignment of error is without merit.

## SIXTH ASSIGNMENT OF ERROR

In his final assignment, defendant argues that the jury verdict should be declared invalid because the non-unanimous verdict in this case is contrary to defendant's rights to due process and equal protection and violates the Sixth and Fourteenth Amendments of the United States Constitution.

Defendant recognizes that at the time of the commission of the alleged offense, La. C.Cr.P. art. 782(A) and La. Const. art. 1, § 17(A) generally provided that cases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict. He notes that effective August 1, 2018, La. Const. art. 1, § 17(A) and La. C.Cr.P. art. 782(A) were amended to generally provide that the verdict in such cases must be unanimous. This amendment also provided that it would apply prospectively. Defendant points out that on March 18, 2019, the United States Supreme Court granted the application for a writ of certiorari in "*Ramos v. Louisiana*, 18-5924, - - U.S. - - (2019)," in order to address the petitioner's argument that the Fourteenth Amendment fully incorporates the Sixth Amendment guarantee of a unanimous verdict. Defendant contends that regardless of the prospective only effect of the amended legislation, and in light of the fact that the

United States Supreme Court will consider this argument in *Ramos*, the non-unanimous verdict rendered against him is a violation of due process and equal protection such that this verdict cannot stand.

In the instant case, the date of the offense was on or between February 27, 2017 and June 20, 2017.  Also, the jury returned a non-unanimous verdict (eleven to one).

The language of La. Act 2018, No. 722, § 1, effective December 12, 2018, and La. Act 2018, No. 493, § 1, effective January 1, 2019, amending La. Const. art. 1, § 17(A) and La. C.Cr.P. art. 782(A), respectively, is clear that the amendment requiring unanimous jury verdicts for crimes whose punishment is necessarily confinement at hard labor applies only in those cases where the offenses are committed on or after January 1, 2019.  Before the amendment, and at the time of the instant offense, the constitutionality of non-unanimous jury verdicts was upheld in both *State v. Bertrand*, 08-2215 and 08-2311 (La. 3/17/09), 6 So.3d 738, and *Apodaca v. Oregon*, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972).  As an intermediate court, we are bound by that precedent.  *State v. Williams*, 18-112 (La. App. 5 Cir. 11/7/18), 259 So.3d 563, 580.[14]

In light of the foregoing, upon review, we disagree with defendant's assertion that his jury verdict should be declared invalid.  This assignment of error is without merit.

## ERRORS PATENT REVIEW

The record was reviewed for errors patent, according to La. C.Cr.P. art. 920, *State v. Oliveaux*, 312 So.2d 337 (La. 1975), and *State v. Weiland*, 556 So.2d 175 (La. App. 5th Cir. 1990).  We find no errors patent requiring correction.

---

[14] It is noted that a writ application was filed with the Louisiana Supreme Court in *Williams*, on December 13, 2018 (No. 2018-KO-2038).

# CONCLUSION

Accordingly, for the foregoing reasons, defendant's conviction and sentence are affirmed.

## AFFIRMED

STATE OF LOUISIANA

VERSUS

MARVIN S. ACEVEDO

NO. 18-KA-683

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

**JOHNSON, J., CONCURS WITH REASONS**

I, respectfully, concur with the majority opinion on the issue of whether the trial court erred in allowing the State to present evidence during the trial for possession of cocaine with the intent to distribute that Defendant resisted arrest for possession by refusing to provide his true identity. It is my opinion that Defendant's refusal to provide his real name did not prove a material issue or have independent relevance to the possession of cocaine over 400 grams trial, and the refusal was not an integral part of the act or transaction whereby the State could not present its case in the possession trial without reference to Defendant's refusal. I find that the admission of Defendant's refusal to provide his real name had the prejudicial effect of portraying him as an illegal immigrant, and that prejudicial effect outweighed any probative value the evidence may have had. Additionally, the State should not have been allowed to benefit from using the name "Marvin Acevedo" in linking Defendant to the CubeSmart storage unit for purposes of convicting him of possession of cocaine, then disregard that same evidence and argue "Marvin Acevedo" is not Defendant's true identity. However, I find that the error by the trial court was harmless because there was sufficient evidence presented to prove Defendant's guilt.

Therefore, I find the trial court erred in allowing the State to present evidence during the trial for possession of cocaine over 400 grams that

Defendant resisted arrest by refusing to provide his true identity.  In all other respects, I agree with the majority opinion.

18-KA-683                                          2

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

MARY E. LEGNON
INTERIM CLERK OF COURT

CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **MAY 8, 2019** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

_____
**MARY E. LEGNON**
INTERIM CLERK OF COURT

# 18-KA-683

### E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE ELLEN SHIRER KOVACH (DISTRICT JUDGE)
TERRY M. BOUDREAUX (APPELLEE)     THOMAS J. BUTLER (APPELLEE)          CYNTHIA K. MEYER (APPELLANT)

### MAILED

HON. PAUL D. CONNICK, JR. (APPELLEE)
RACHEL L. AFRICK (APPELLEE)
JENNIFER C. VOSS (APPELLEE)
ASSISTANT DISTRICT ATTORNEYS
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053